**Emilio A. PASCUAL, Plaintiff,**

v.

**Louis SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 86 CIV. 3689 (SWK).**

United States District Court, S.D. New York.

July 11, 1989.

Bronx Legal Services by Steven Telzak, Bronx, N.Y., for plaintiff.

Rudolph W. Guiliani, U.S. Atty., S.D. N.Y., by Kathleen Zebrowski, Sp. Asst. U.S. Atty., New York City for defendant.

MEMORANDUM OPINION
AND ORDER

KRAM, District Judge.

Plaintiff Emilio A. Pascual brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), as amended, codified at 42 U.S.C. § 405(g) and § 1383(c)(3), to review the final determination of the Secretary of Health and Human Services ("the Secretary") denying his applications for Social Security Disability Insurance benefits ("SSD") and Supplemental Security Income Disability benefits ("SSI"). Defendant moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and plaintiff cross moved, seeking reversal of the Secretary's decision or a remand for further development of the record.

After two applications to the Secretary were denied, both initially and on reconsideration, plaintiff requested and received a *de novo* hearing on June 14, 1985 in front of Administrative Law Judge Marilyn P. Hoppenfeld ("ALJ"). Plaintiff appeared *pro se* with an interpreter during the hearings on both applications and also before the ALJ. Although plaintiff commenced this action *pro se*, he subsequently retained Bronx Legal Services as counsel. Plaintiff argues that he did not receive a full and fair hearing and that the Secretary's decision denying him benefits is not supported by substantial evidence. To the contrary, the Secretary asserts that the plaintiff was afforded a full and fair hearing and that substantial evidence supports his decision.

This Court referred the case to Magistrate Naomi Reice Buchwald pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b) for a report and recommendation ("report") with respect to the motions. The Magistrate's report concludes that the ALJ's determination that plaintiff could perform his prior work is supported by substantial evidence. Consequently, the Magistrate recommends that the Secretary's motion for judgment on the pleadings be granted. Plaintiff has objected to the report, and defendant has responded to plaintiff's objection. This Court reviews *de novo* the parts of the report to which plaintiff has objected.

BACKGROUND

Plaintiff, who appeared with a Spanish language interpreter, was born in Cuba on September 15, 1929, and has completed seven grades of formal education. *See* Transcript of Administrative Record at 50, 102 (hereinafter "Record"). Before and during part of 1982, plaintiff was employed respectively as hospital porter, a machine operator and a truck driver. He was laid off from his last job in 1982 and subsequently collected unemployment benefits until 1983. *See* Record at 30–36, 38–39.

Plaintiff, presently 59 years of age, applied for SSD and SSI benefits on October 31, 1984, claiming disability due to high blood pressure, a heart condition, a groin hernia and arthritis in his legs. According to plaintiff, these date back to November, 1981. *See* Record at 50. Mr. Pascual claims that he entered a hospital emergency room twice during 1984 for treatment of a heart condition. *See* Record at 37. Although the Secretary and ALJ made attempts to retrieve records of these visits from Montefiore Hospital, the records were not found. *See* Record at 11. Plaintiff is presently taking medication, including hydrochlorothiazide and nitroclyerine, for his heart condition. He testified that the latter medicine eases his chest pain within one-half hour. *See* Record at 39, 41, 114, 150. An x-ray taken by the consulting physician appointed by the Secretary found plaintiff's aortic knob enlarged, but the physician noted that the pain was atypical and not exertional. He stated that plaintiff's activities were not restricted by his heart condition. *See* Record at 11, 119, 122. Dr. Ajudua, plaintiff's treating physician, diagnosed plaintiff as having a deformed duodenal bulb and arteriosclerotic heart disease. *See* Record at 125, 149.

Plaintiff's claim of high blood pressure was confirmed by the diagnosis of his treating physician, Dr. Ajudua. Mr. Pascual claims it affects him twice a week, even when he takes medication, and more when he neglects to take the medication. Anoth-

er treating physician further confirmed that Mr. Pascual has high blood pressure, but he failed to note how it might affect or impair plaintiff. *See* Record at 128. The ALJ also appointed a consulting physician who found only that plaintiff suffers from blood hypertension, which can be controlled by medication. *See* Record at 11, 118. Claiming arthritis in the shoulders and left knee, *see* Record at 114, plaintiff admits that it affects him only twice a month, and that the pain may be controlled by taking the drug Naprosyn. Dr. Ajudua diagnosed plaintiff as having degenerative osteoarthritis of the knee, but the consulting physician's diagnosis found no inflammation of the joints. Plaintiff wears a brace to control his hernia and claims to be fearful of it bursting even while wearing the brace. The consulting physician found the hernia to be "asymptomatic", or in other words, that plaintiff simply lacked the symptoms that would indicate a hernia.

Although Dr. Ajudua reported that plaintiff can stand and sit for one-half hour each, the plaintiff testified that he can stand for one hour at a time and can walk 3–4 blocks without stopping, but that he has trouble kneeling due to arthritis. Mr. Pascual concedes that his limitations do not prevent him from helping around the house, going to movies or watching television. A residual functional capacity test administered by the Secretary found plaintiff capable of performing his past work. *See* Record at 82.

In addition to plaintiff's physical claims, Dr. Ajudua found that the plaintiff suffers from "anxiety neurosis". *See* Record at 148. Plaintiff further claims that his "nerves have gotten worse ...". *See* Record at 108. In stark contrast, the consulting physician's diagnosis found that the plaintiff does not suffer from anxiety or any other symptoms of mental disability. The record does not include objective results from any mental tests that may have been given plaintiff in conjunction with these diagnoses, and there is no indication that plaintiff has ever been treated by a psychiatrist or psychologist.

The ALJ found plaintiff not disabled, capable of performing his past work, and thus ineligible for SSI and SSD benefits. In denying plaintiff's request for review on February 28, 1986, the Appeals Council finalized the ALJ's determination as to plaintiff's disability claim. According to the ALJ, "[d]ue consideration has been given to all evidence from the claimant's treating physician ... [and] [i]t must be noted that claimant's treating physician [Dr. Ajudua] merely sent letters stating what claimant's impairments were...." Record at 11. The treating physician failed to send the clinical and diagnostic medical data requested by the Secretary. *Id.* The ALJ therefore appropriately "placed more credence on the consultative report because of the clinical data supplied therein." *Id.* The issue currently before this Court is whether the absence of the treating physician's clinical data and the absence of any mental testing of plaintiff necessitates a remand for further development of the record.

## DISCUSSION

The fact-finder cannot dismiss a treating physician's diagnosis merely because it contains no clinical data, as there is no requirement that objective clinical or laboratory findings support the physician's medical testimony. *Bluvband v. Heckler,* 730 F.2d 886, 893 (2d Cir.1984) (citing *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 64 (2d Cir.1980)). Furthermore, "[t]he expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary." *Id.* at 892 (quoting *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978)). An ALJ faced with conflicting evidence must "compare the probative value of the treating physician's opinion with the probative value of the conflicting evidence" to determine if the conflicting evidence is substantial. *Id.* at 893. Furthermore, where the claimant appears *pro se,* the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts ..." *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980)

(*pro se* plaintiff also was in poor health and lacked competency in spoken english) (quoting *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 43 (2d Cir.1972)); *Bluvband, supra,* 730 F.2d at 892. The ALJ, however, "need not resolve every inconsistency and ambiguity in the record," *Bluvband, supra,* 730 F.2d at 892, but must nonetheless "affirmatively assist the parties in developing the record" when the claimant appears *pro se. Id.; Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984). In *Hankerson* the Court held that the ALJ's duty included advising the claimant to obtain more detailed records from the treating physician if the physician's initial records contained insufficient information from which the ALJ could make a decision. *Hankerson, supra,* 636 F.2d at 896.

### Alleged Physical Disabilities

■ In the present action, the treating physician, Dr. Ajudua, also failed to provide adequate test results in support of his medical opinion, which contrasted with the consulting physician's opinion. Unlike this case, however, there was no substantial evidence in *Hankerson* to contradict the treating physician's conclusory opinion. *Id.* at 896. Additionally, the *Hankerson* Court failed to even question the claimant about the illness which allegedly caused his incapacity. *Id.* Thus, the Second Circuit in *Hankerson* found that "[w]hile none of these errors standing alone might be sufficient to set aside the Secretary's determination, their combination persuades us that plaintiff did not have a fair and adequate hearing before the Secretary." *Id.* at 897.

In this proceeding, the Secretary mailed a questionnaire to plaintiff's treating physician, Dr. Ajudua, that requested a detailed account of all clinical findings, laboratory and test results. Record at 149. Dr. Ajudua did not complete the questionnaire, but instead superficially responded by stating the plaintiff's symptoms and limitations, the physician's diagnosis, and the plaintiff's medications. *See id.* The ALJ questioned the plaintiff in regard to his physical disabilities, his prior medical history, his medications and his ability to work. She gave the plaintiff an opportunity to com-

ment on, or object to, the record, and she sent for the records of plaintiff's visits to the hospital. Record at 23–49. Finally, the ALJ and the Magistrate both found substantial evidence in the testimony of the consulting physician to support a finding that plaintiff could work. Report at 9. This Court agrees.

### Alleged Mental Disabilities

■ The ALJ also has a duty to develop material evidence of mental disability in cases where there is already some evidence that the plaintiff is mentally incapacitated. A "physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statement of symptoms." 20 C.F.R. § 404.1508 (1988). Only where there is evidence of mental incapacity do the regulations require the ALJ to make "every reasonable effort [to] ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment" before determining that a claimant is not disabled. 20 C.F.R. § 404.1503(e) (1988).

In this case, Dr. Ajudua's statement that plaintiff suffers from "anxiety neurosis" is not itself evidence of mental incapacity that would obligate the ALJ to further develop evidence of mental disability. Plaintiff states that he suffers from a nervous condition, which Dr. Ajudua conclusorily confirmed. Plaintiff, however, provided no supporting evidence of this nervous condition which, itself, would not constitute grounds for finding plaintiff mentally incapacitated. Moreover, the consulting physician's diagnosis found that the plaintiff does not suffer from anxiety or any other symptoms of mental disability. Under these circumstances and in the absence of allegations of a more serious mental impairment, the ALJ was not required by the regulations to appoint a psychiatrist or psychologist to examine the claimant. *Cf.* 20 C.F.R. § 404.1503 (1988) (ALJ must make reasonable effort to have claimant examined where evidence of mental incapacity exists); *Padilla v. Heckler,* 643 F.Supp. 481, 487 (S.D.N.Y.1986) (court ordered re-

mand where the plaintiff claimed not only nervousness, but also that she experienced hallucinations and heard voices).

## CONCLUSION

For the aforementioned reasons, defendant's motion for judgment on the pleadings is granted, dismissing this action, while plaintiff's cross-motion is denied.

SO ORDERED.