**Edwind F. PRATTS, Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellee.**

No. 1426, Docket 95–6260.

United States Court of Appeals, Second Circuit.

Argued June 10, 1996.

Decided Aug. 14, 1996.

Steven Landis, Hauppauge, NY (Robert M. Brigantic, Binder and Binder, of counsel), for Plaintiff–Appellant.

Stanley N. Alpert, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Varuni Nelson, Bruce H. Nims, Asst. U.S. Attys., of counsel), for Defendant–Appellee.

Before OAKES, ALTIMARI and WALKER, Circuit Judges.

OAKES, Senior Circuit Judge:

Appellant Edwin F. Pratts appeals the judgment of the United States District Court for the Eastern District of New York, John F. Gleeson, *Judge,* entered on September 1, 1995, affirming the decision of the Appellee Commissioner of Social Security's ("Commissioner") that Pratts was not disabled within the meaning of 42 U.S.C. § 423 (1994) at or before the time his eligibility for disability insurance expired. In this appeal, Pratts claims that the Commissioner improperly denied him disability benefits. We find that the denial was based on an incomplete and inadequate record which included several erroneous determinations by the administrative law judge who heard the claim. Accordingly, we vacate the decision of the district court and remand the case to the Commissioner for further development of the evidence and reconsideration of Pratts's application.

## BACKGROUND

Pratts filed an application for disability benefits with the Social Security Administration ("SSA") in November 1992, claiming that he was disabled due to the manifestations of an HIV infection. Pratts, who was in his mid-forties at the time, alleged in his application that he had not been able to work since April 1987 as a result of his impairments. Previously, he had worked for roughly fifteen years as an industrial engineer and mechanic, a job requiring significant strength and exertion. Because of his employment history, Pratts met the SSA's disability insured

status requirements through December 31, 1990, and, therefore, was entitled to disability benefits if he could prove that he was disabled on or before that date.

In his application, Pratts stated that he had been treated on an outpatient basis at the Veterans' Administration Hospital (the "VA") in San Juan, Puerto Rico, starting in August 1987. Pratts did not have one treating physician, but was seen primarily by doctors in the VA's Infectious Disease Clinic. The multitude of doctors treating Pratts may explain why his medical records, which are the bulk of the evidence before us, are incomplete and do not reflect a decipherable course of treatment. Rather than recount every detail of these records, then, we instead will briefly summarize their contents.

*Medical Evidence*

After going to the VA once in 1987 with a complaint of poor vision, Pratts began fairly regular visits in the fall of 1988. The inadequacies of his medical records are immediately evident: there is no indication of what prompted the CT scan administered at Pratts's first visit in mid-September 1988, nor any record of his second visit for gastroenteritis in late September 1988, nor any explanation provided for the diagnosis of AIDS made at his third visit in early October 1988.[1] Pratts's complaints at his 1988 visits included headaches, dizziness, blurred vision, and diarrhea, and he was prescribed ampicillin for sinusitis in November.

Pratts was treated at the VA nine times in 1989. He continued to complain of headaches and blurred vision, and he again reported dizziness toward the end of the year. The records also show he suffered nasal secretions, rashes, and between a ten and twenty pound weight loss during the course of the year. Blood tests were recommended in October, but no results appear in the records. Pratts was diagnosed with maxillary sinusitis in November and was seen by a psychiatrist for anxiety in late December.

In early 1990, Pratts visited the Infectious Disease Clinic, complaining of neck and shoulder pain; he also saw an ophthalmologist for his vision problems. His complaints of dizziness, headaches, and anxiety persisted, and in March he was diagnosed with positional vertigo. Pratts was found to be suffering from anemia at both his April and May visits, and was treated for lower back pain starting in May. In July, Pratts was again evaluated for sinusitis and vertigo: the physician's findings are almost completely illegible, but indicate nasal blockage and positional vertigo. Treatment notes from 1990 show that Pratts remained on AZT and took other medications as well, including Buspar for his anxiety and Motrin for the pain in his back and head. At the end of November, his T-cell count of 211 put him very close to the 200 count used by the Center for Disease Control to identify those people whose HIV infection has developed into AIDS.

Both parties detail Pratts's treatment for the period after his insured status expired on December 31, 1990, until he filed his benefits application. Although such evidence "is not irrelevant" to a disability determination, *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir.1989), we find it unnecessary for the purposes of our discussion here. Suffice it to say that Pratts continued to suffer from a variety of maladies connected to his HIV infection and that his medical records continued to display an unfortunate degree of inexactitude regarding test results, medications, weight loss or gain, symptoms, and follow-up treatment.

*Procedural History*

The SSA denied Pratts's November 1992 application for benefits in March 1993, and also denied his request for reconsideration in August 1993. Pratts then requested a hearing before an administrative law judge ("ALJ"). The ALJ held the hearing in February 1994; Pratts was represented by counsel and testified on his own behalf. The only other testimony was that of Dr. Edgar Bonilla, a medical expert called by the SSA who based his opinions on his review of Pratts's records from the VA. Unfortunately, the

---

**1.** This is the first mention of either HIV or AIDS in Pratts's records. The appendix demonstrates that Pratts's HIV infection had in fact been confirmed before this visit and that he had begun treatment with the drug AZT in 1987. The treatment notes from the VA, however, show no record of these facts.

hearing tape was mistakenly turned off for a portion of Dr. Bonilla's testimony, leaving a significant gap in the administrative record.

The Secretary of Health & Human Services has promulgated a five-step procedure for evaluating disability claims. 20 C.F.R. § 404.1520 (1995). In this case, the ALJ found that Pratts (1) was not currently working; (2) had a severe impairment that significantly limited his ability to perform work; (3) was not presumptively disabled because his condition did not meet or equal the impairments listed in the regulations; and (4) could not perform his past work. The present dispute concerns the fifth determination—whether there is other work that Pratts could do. The ALJ found that the Commissioner had demonstrated that Pratts retained his exertional capacity for light work. After evaluating all the evidence, the ALJ concluded that Pratts was not under a disability as defined in the Social Security Act, 42 U.S.C. § 423(d) (1994), on or before December 31, 1990. The ALJ based her conclusion on several factors, including Pratts's medical records and the testimony of the Commissioner's medical expert.

The ALJ issued her decision denying Pratts disability benefits in March 1994. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Pratts's *pro se* request for review on May 17, 1994.

Pratts sought review of the Commissioner's decision in federal court pursuant to 42 U.S.C. § 405(g) (1994). The parties cross-moved for judgment on the pleadings, and the district court, after a brief hearing, granted the Commissioner's motion on the ground that substantial evidence supported the findings of the ALJ. This appeal followed.

## DISCUSSION

■ The standard for our review of Pratts's appeal has been made clear in numerous prior decisions of this court. When considering an appeal of a disability case, "we undertake our own plenary review of the administrative record to determine whether substantial evidence supports the [Commissioner]'s denial of benefits." *Havas v. Bow-*

*en,* 804 F.2d 783, 785 (2d Cir.1986); *see also Vargas v. Sullivan,* 898 F.2d 293, 296 (2d Cir.1990); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). We therefore focus our attention on the administrative ruling rather than on the decision of the district court. *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991); *Wagner v. Secretary of HHS,* 906 F.2d 856, 860 (2d Cir.1990). It is not our function to determine *de novo* whether Pratts is disabled, *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984), and "we may only set aside a determination which is based upon legal error or not supported by substantial evidence." *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam).

"Substantial evidence" has been defined by the Supreme Court as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *see also Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir.1995); *Arnone,* 882 F.2d at 37.

■ It is the rule in our circuit that "the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record" in light of "the essentially non-adversarial nature of a benefits proceeding." *Echevarria v. Secretary of HHS,* 685 F.2d 751, 755 (2d Cir.1982). This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, 20 C.F.R. § 404.1512(d)-(f) (1995), and exists even when, as here, the claimant is represented by counsel. *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996). Based on the administrative record before us, we believe that the ALJ did not fulfill her duty in Pratts's case in several respects. We therefore find that her decision to deny Pratts benefits is not supported by substantial evidence.

■ First, and most remarkably, the hearing record upon which the ALJ relied was significantly compromised by the failure to transcribe a portion of Dr. Bonilla's testimony. In a case such as this, where the assessment of disability involves careful consider-

ation of medical evidence, the testimony of the only medical expert must figure prominently in the ALJ's decision making. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988) (findings of ALJ must be consistent with medical evidence); *Bell v. Secretary of HHS*, 732 F.2d 308, 310–12 (2d Cir.1984) (ALJ must carefully examine medical evidence, taking into account the entire record). Indeed, the ALJ referred extensively to Dr. Bonilla's testimony in her evaluation of the medical evidence and stated that she agreed with his conclusions. Without the benefit of a complete transcript, however, the bases for these conclusions were lost to the ALJ, the Appeals Council, the district court, and now to us. It is surprising that the Appeals Council did not remedy this problem at the first level of review by granting Pratts a new hearing. *See, e.g., Scime v. Bowen*, 822 F.2d 7, 8 (2d Cir.1987) (new hearing granted when taped transcript was inaudible). Faced with such an incomplete record of Pratts's hearing, we of course cannot say the ALJ's decision is supported by substantial evidence. *See Mimms*, 750 F.2d at 186 (remanding for elicitation of information missing in transcript).

Second, it appears to us that even if we were to disregard the missing testimony, the record before us is simply inadequate to support a denial of benefits. Much of Pratts's medical history is missing, including his initial diagnosis of HIV, treatment notes for the period August 1987—September 1988, lab results for blood tests and other prescribed tests, identification of some medications, and treatment notes from his social worker. Moreover, the medical records that do appear in the record are frequently incomplete or illegible and provide no coherent overview of Pratts's treatment. The only expert medical testimony is that of Dr. Bonilla, who relied exclusively on the materials in this record to form his opinion that Pratts was capable of light work. The sole evidence before the ALJ refuting Pratts's claims of disabling pain and illness, therefore, was an incomplete medical history and an expert opinion rendered from it. Such a record offers us no basis to find the substantial evidence necessary to uphold the ALJ's decision. *See Vargas*, 898 F.2d at 295–96

(stating that a doctor's assessment of other doctor's findings merits "little weight" in a disability determination); *Hidalgo v. Bowen*, 822 F.2d 294, 298 (2d Cir.1987) (testimony of physician who had never examined claimant and relied on incomplete medical records did not constitute substantial evidence).

Finally, the ALJ made several errors in assessing the evidence which may have influenced her ultimate finding that Pratts was not disabled. She stated that there was no evidence of marked weight loss or anemia, yet Pratts's medical records indicate an almost twenty pound weight loss by December 1989, as well as anemia in April and May 1990. The ALJ also noted that Pratts's HIV infection was not corroborated by an ELISA test despite a treatment note that Pratts was "ELISA positive since 4/24/88." Additionally, the ALJ found no persistent sinusitis even though the medical records show treatment for sinusitis in 1988, 1989, and 1990. The ALJ wrote that Pratts's "HIV positive is controlled with vitamins and proteins," a statement that is directly contradicted by Pratts's AZT prescription and perhaps indicates a failure to comprehend fully the nature of HIV and AIDS. These errors further winnowed the amount of substantial evidence underlying the ALJ's decision to deny Pratts disability benefits. *See, e.g., Decker v. Harris*, 647 F.2d 291, 295 (2d Cir.1981) (finding ALJ's conclusion erroneous when contradicted by direct evidence in the record).

For the reasons given above, the ALJ did not, and indeed could not, decide Pratts's claim with the benefit of a complete and accurate record. She also committed several factual errors in evaluating the medical evidence of Pratts's allegedly disabling condition. We therefore hold that her decision to deny Pratts disability benefits is not supported by substantial evidence.

■ We also find that the ALJ erred in her application of the Medical–Vocational Guidelines (the "grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1995), to Pratts's case. Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. Generally speaking, if a claimant suffers only from exertional

impairments, e.g., strength limitations, then the Commissioner may satisfy her burden by resorting to the applicable grids. For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled. In this case, if Pratts suffered only from exertional impairments, there is no dispute that the grids would require a determination that he was not disabled based upon his age, education, and prior work experience. If, however, Pratts "suffer[ed] from additional 'nonexertional' impairments, the grid rules may not be controlling" and "the guidelines c[ould] not provide the exclusive framework for making a disability determination." *Bapp v. Bowen,* 802 F.2d 601, 604–05 (2d Cir.1986).

■ Under *Bapp,* the applicability of the grids should be considered on a case-by-case basis:

If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate. But if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments. Accordingly, where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment the application of the grids is inappropriate.

*Id.* at 605–06 (citation omitted). A claimant's work capacity is "significantly diminished" if there is an "additional loss of work capacity ... that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 606.

■ In the present case, the ALJ did not specifically articulate the nonexertional impairments that Pratts suffered. Nonetheless, in light of her reference to "his nonexertional limitations," she apparently believed that he had some. The ALJ found that the grids directed a conclusion that Pratts was not disabled even though she neither identified his nonexertional limitations nor considered whether a vocational expert was necessary. The ALJ simply proceeded directly to the ultimate question of disability without first considering whether further testimony was necessary in light of Pratts's nonexertional impairments.

The ALJ's conclusion here is similar to the conclusion drawn by the ALJ in *Bapp* that "claimant's capacity for a full range of light work has not been significantly compromised by his additional non-exertional limitations." *Id.* at 603. There, we found that the record did not adequately explain or determine the extent to which the claimant's nonexertional impairment would further diminish his capacity to perform "light work." *Id.* We held that when a claimant's nonexertional impairments significantly diminish his ability to work, "the [Commissioner] must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform." *Id.*

We therefore conclude that on remand, the ALJ must conduct a re-evaluation as to whether the Commissioner has demonstrated that Pratts's ability to perform the full range of light work was not significantly diminished by his nonexertional impairments. If the ALJ finds that Pratts's ability is significantly diminished, then the Commissioner should be required to present the testimony of a vocational expert or other evidence concerning the existence of jobs in the national economy for an individual with Pratts's limitations.

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Parker,* 626 F.2d at 235; *see also Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980). Remand is particularly appropriate where, as here, we are "unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision." *Berry,* 675 F.2d at 469. Because we find the ALJ's denial of benefits was not supported by substantial evidence and was based upon legal error, we remand Pratts's case to the Commissioner.

## CONCLUSION

For the foregoing reasons, we vacate the decision of the district court with instructions to remand the matter to the Commissioner for further proceedings.