**Jean GENIER, Plaintiff–Appellant,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant–Appellee.**

No. 07–1727–cv.

United States Court of Appeals, Second Circuit.

Nov. 5, 2008.

Mark Schneider, Plattsburgh, NY, for Appellant.

Maria Fragassi Santangelo, Special Assistant United States Attorney, Barbara L. Spivak, Chief Counsel, Region II Office of the General Counsel, Social Security Administration (of counsel) for Glenn T. Suddaby, United States Attorney for the Northern District of New York, for Appellee.

Present DENNIS JACOBS, Chief Judge, RICHARD C. WESLEY, and PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Jean Genier appeals from an order entered March 27, 2007 by the District Court for the Northern District of New York (Homer, *J.*) affirming the Commissioner of Social Security's denial of her application for benefits. In August 2008, this court granted Genier's pre-argument motion to submit evidence of her January 2007 Multiple Sclerosis ("MS") diagnosis. We assume the parties' familiarity with the un-

derlying facts, the procedural history, and the issues on appeal.

Genier contends that the Commissioner failed to meet his burden of proof that Genier could perform other work available in the national economy, because the administrative law judge ("ALJ") erred by: (1) concluding that Genier had the residual functional capacity to perform light and sedentary work; (2) rejecting Genier's credibility; and (3) violating the treating physician rule. We review the ALJ's decision to determine if it is supported by substantial evidence.

When a district court reviews a determination of the Commissioner, we "review the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Appel*, 276 F.3d 103, 108 (2d Cir.2002). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

We vacate and remand with instructions to remand to the Commissioner of Social Security for reconsideration of Genier's residual functional capacity in light of her exertional and non-exertional limitations, and for consideration of Genier's MS diagnosis.

■ ■ Genier first argues that the ALJ erred by: (1) finding that she was able to perform light and sedentary work during the period in question (July 31, 2001 through October 31, 2003), and (2) by providing the vocational expert with inaccurate assessments of her limitations.

In assessing Genier's residual functional capacity, the ALJ noted that a functional assessment revealed that she was only "moderately limited" with respect to "standing, lifting, carrying, climbing stairs,

understanding and remembering instructions, carrying out instructions, maintaining attention and concentration, interacting appropriately with others, maintaining socially appropriate[ ] behavior and functioning in a work setting. . . ." He also acknowledged that she was "very limited" with respect to pushing, pulling, and bending. In light of these limitations, and in the absence of other definitive medical evidence that she had any specific disabling condition, the ALJ relied on the vocational expert's testimony that housekeeper, office helper, surveillance system monitor and preparer positions remained viable job options for Genier.

It is apparent that the ALJ's assessment of Genier's abilities do not reflect the full range of Genier's medical problems and was not, therefore, supported by substantial evidence. A number of the positions suggested by the vocational expert clearly seem beyond Genier's abilities during the period in question. For example, with regard to "light" work, the vocational expert suggested that Genier could be a "housekeeper/cleaner", even though the ALJ posited that Genier had only infrequent use of her dominant right hand. The expert also suggested that Genier could take "an office helper position," although it is unclear exactly what responsibilities this position would entail (and therefore, whether Genier could actually perform the job in light of her limitations). It seems, however, that "housework" might be difficult without the regular use of a dominant hand, and that an "office helper" job might involve dealing frequently with others, a fact which could exacerbate Genier's various social phobias and/or her anxiety level. Ultimately, both of these positions were eliminated when it was suggested that Genier had a sit/stand limitation. When faced with that limitation, the vocational expert suggested two sedentary positions:

"surveillance system monitor" and "preparer".

Given Genier's mental and emotional difficulties, the surveillance system monitor position seems an odd choice. To suggest that Genier could "monitor" a surveillance system raises the question: what would Genier do if she "monitored" something which required a response? Even absent her physical problems, her short term memory problems and cognitive impairments (*i.e.*, her full-scale IQ of 81 and her 1998 diagnosis of "borderline intellectual functioning", both of which clearly impacted Genier's abilities during the period at issue), suggest that Genier might not have the wherewithal to select and execute the appropriate response if the surveillance system she was monitoring presented a stimulus. In fact, the vocational expert herself suggested there might be a problem if Genier was unable to maintain concentration, make quick judgments, or understand emergency situations. The expert stated that an individual with such difficulties may be "able to get hired in the position but would not be able to maintain [it] for [any period of] longevity," and might not be able to perform the surveillance system monitor position at all. These assessments are probative of the ALJ's residual functional capacity assessment given that "[t]o be capable of performing sedentary work under the guidelines, an individual must have some reasonable chance in the real world of being hired and, once hired, of keeping the job." *Wingo v. Bowen*, 852 F.2d 827, 831 (5th Cir.1988).

The alternative "preparer" position suggested by the vocational expert is equally problematic. The vocational expert described a "preparer" as someone who "[c]uts, saws, or breaks off gates using shears or foot press to the cutting tool and remove[s] spurs and smoothes [sic] rough edges for casting." Not only does this position sound particularly arduous, but given Genier's inability to concentrate, her problems with her dominant hand, and her episodes of numbness and tingling in her arms and legs (reported at least as early as 1998), it seems downright unsafe to expect such an individual to perform a job which regularly involves saws, cutting tools, foot presses, and 45 other sharp, heavy objects.

Granted, Genier's file contains inconsistencies, and the ALJ discounted somewhat the extent of Genier's limitations on the basis that some of her reported symptoms are not supported by a medical diagnosis. As to that, Genier raises a second ground of objection. The second objection further supports our decision to vacate and remand for reconsideration of the vocational expert's testimony and Genier's actual exertional and non-exertional limitations.

■ Genier argues that the ALJ erred by discounting her credibility and therefore underestimating her non-exertional limitations with respect to her residual functional capacity. In his decision, the ALJ acknowledged that "Social Security Regulations require that consideration be given to the claimant's subjective complaints of pain and other symptoms", and in *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999), the Second Circuit recognized that "[u]nder appropriate circumstances, the subjective experience of pain can support a finding of disability." *Snell*, 177 F.3d at 135. Nonetheless, after considering Genier's complaints here, the ALJ found that in light of the "unremarkable [medical] findings" in this case, Genier's "subjective complaints were grossly overstated." He did not, therefore, include "pain" as a non-exertional limitation which negatively impacted her residual functional capacity.

To the extent that the ALJ discounted Genier's credibility because she could not present objective medical findings to sup-

port her subjective complaints of pain, numbness, and tingling, the 2007 MS diagnosis could directly contradict the ALJ's assessment. The ALJ called the medical findings supporting her subjective complaints of pain "unremarkable". It is unclear whether the ALJ would find Genier's complaints more credible in light of her diagnosis, and whether the fact of her diagnosis would affect the ALJ's assessment of Genier's residual functional capacity. An analysis of whether or not the diagnosis actually does alter the residual functional capacity assessment, however, requires a factual inquiry which is an inappropriate endeavor for this court. As such, the judgment is vacated with instructions that the case be remanded to the Commissioner for reconsideration of the impact of Genier's MS diagnosis on the ALJ's credibility findings.

■ Genier also argues that the ALJ erred by rejecting the findings of several treating physicians and crediting instead the conclusions of a consultative doctor. Pursuant to the regulations governing the Social Security scheme, an opinion from a treating physician is given more weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of ... medical impairment". 20 C.F.R. § 416.927(d)(2). If the treating physician's opinion is well-supported by other medical evidence, then it is given controlling weight. *Id.*

Genier's primary treating "physician" during much of the period in question was Physician's *Assistant* James Gabler of Hudson Headwaters Health Network. Genier was also treated by Nurse Practitioner Brown from the same clinic. The Commissioner argues that a physician's assistant and a nurse practitioner do not constitute "acceptable medical sources" under the treating physician rule pursuant to Social Security Ruling 06–3p ("SSR 06–

3p"),(effective date August 9, 2006), and therefore, their assessments do not warrant the same deference as a physician's opinion. The Commissioner's argument is compelling.

" 'Social Security rulings are entitled to deference except when they are plainly erroneous or inconsistent with the Social Security Act.' " *Gordon v. Shalala,* 55 F.3d 101, 105 (2d Cir.1995) (quoting *Walker v. Sec'y of Health and Human Servs.,* 943 F.2d 1257, 1259–60 (10th Cir.1991)). According to Social Security Ruling 06–3p, "only 'acceptable medical sources' can be considered treating sources ... whose medical opinions may be entitled to controlling weight." SSR 06–3p. "Acceptable medical sources" are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a). In contrast, nurse practitioners and physicians' assistants are defined as "other sources" whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight. 20 C.F.R. § 416.913(d)(1). Therefore, while the ALJ is certainly free to consider the opinions of these "other sources" in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician. *See Mongeur v. Heckler,* 722 F.2d 1033, 1039 n. 2 (2d Cir.1983) ("the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician.").

■ In Genier's case, many of the key medical opinions cited during the benefits period at issue were those of a physician's assistant and a nurse practitioner—and not a physician. As such, the ALJ was free to discount the assessments accordingly in favor of the objective findings of

other medical doctors. There was no treating physician error.

We hereby **VACATE** the judgment and **REMAND** to the district court with instructions to remand the matter to the Commissioner for reconsideration in light of this order.