Kathryn Suzanne SLATTERY, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.

No. 14–CV–6402 EAW.

United States District Court, W.D. New York.

Signed June 29, 2015.

 

Timothy Hiller, Justin M. Goldstein, Law Offices of Kenneth Hiller, PPLC, Amherst, NY, for Plaintiff.

Monika Crawford, Social Security Administration, New York, NY, Kathryn L. Smith, U.S. Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

## I. INTRODUCTION

Plaintiff Kathryn Suzanne Slattery ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Plaintiff's application for disability benefits. (Dkt. 1). Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") William M. Manico was not supported by substantial evidence in the record and was based on erroneous legal standards.

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 10, 12). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Thus, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and

Plaintiff's motion (Dkt. 10) is denied. Plaintiff's complaint is dismissed with prejudice.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Overview

On January 9, 2012, Plaintiff protectively filed an application for disability insurance benefits. (Administrative Transcript (hereinafter "Tr.") 150–51). Plaintiff alleged a disability onset date of June 26, 2011. (Tr. 150). In her disability report, Plaintiff alleged the following disabilities: chronic abdominal pain, anal dysplasia, herpes simplex virus ("HSV") of the eye, bipolar disorder, and liver lesions. (Tr. 167). The Commissioner denied Plaintiffs application on April 10, 2012, and Plaintiff filed a request for an ALJ hearing on April 20, 2012. (Tr. 20).

On December 4, 2012, Plaintiff, represented by counsel, testified at a hearing via videoconference before ALJ Manico. (Tr. 39–75). Vocational Expert ("VE") Ray Berger also appeared and testified. (Tr. 75–83). On January 25, 2013, the ALJ issued a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 20–34).

On May 23, 2014, the Appeals Council denied Plaintiffs request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–3). On September 13, 2014, Plaintiff filed this civil action appealing the final decision of the Commissioner. (Dkt. 1).

### B. The Non–Medical Evidence

At the time of the administrative hearing, Plaintiff was a 36 year-old female. (Tr. 162). Plaintiff completed school through the ninth grade and passed the General Education Development ("GED") tests. (Tr. 53, 168). Plaintiff indicated

she previously worked as a secretary, concierge driver, a cleaner for an auto repair shop, and had a number of other jobs throughout her life. (Tr. 42, 168, 189–90). Plaintiff lived with her family, including four children under the age of 18. (Tr. 42–43).

### 1. Plaintiff's Testimony

Plaintiff testified that she had pain in her intestines and esophagus, headaches, anxiety, and HSV keratitis in her left eye. (Tr. 41–42). Plaintiff testified that she was legally blind in her left eye. (Tr. 42). Plaintiff testified that eating caused her to become bloated and created significant pain or uncontrollable diarrhea. (Tr. 43). She took laxatives and dimatol for her irritable bowl syndrome. (Tr. 49). Plaintiff also received laser therapy treatments for anal dysplasia. (Tr. 43–44). Plaintiff had migraine headaches three to five times a month. (Tr. 60).

Plaintiff alleged diagnoses of bipolar disorder, borderline personality disorder, post-traumatic stress syndrome, Attention–Deficit/Hyperactivity Disorder, and Obsessive Compulsive Disorder. (Tr. 48). Plaintiff claimed multiple incidents have led to the posttraumatic stress, the most recent being when she was "taken to a place and drugged and people ... had sex with [her]." (*Id.*). She took Topamax and Buspar for her anxiety and bipolar disorder. (Tr. 49–50).

Plaintiff testified she was molested by family members and clergy as a child, which caused her to run away from home at the age of 15. (Tr. 51). Plaintiff claimed her physical pain and anxiety precluded her from ongoing relationships outside her family and limited her social activities. (Tr. 62).

Plaintiff testified she was limited to lifting up to ten pounds by her lumpectomy, but could not repeatedly lift it. (Tr. 67–68). Plaintiff believed her frequent bathroom trips would upset her and her super-visor. (Tr. 69). Plaintiff affirmed that at least once per hour she got incapacitating pain that prevented any kind of work activity. (Tr. 71). Plaintiff was fired from her previous job as a concierge driver due to her ongoing illness. (Tr. 76).

### 2. Vocational Expert Testimony

The ALJ presented VE Berger with a hypothetical question. (Tr. 75). The VE was asked to consider a hypothetical claimant with a GED who retained the physical residual functional capacity ("RPC") to perform light work and may only occasionally balance, climb, stoop, kneel, crouch, or walk; should be allowed to alternate sitting and standing at intervals for approximately 20 to 25 minutes; should avoid concentrated exposure to hazards; retained the mental RFC to perform unskilled work involving simple instructions where interaction with others are routine, superficial, and incidental to the work performed; needed a regular work break approximately every two hours; and did not require excellent depth perception. (Tr. 75–76). The VE responded that the hypothetical individual could be employed as a package line worker or an assembler. (Tr. 78).

Plaintiffs attorney posed a second hypothetical to the VE with the same restrictions as the first hypothetical, except the claimant could not sustain work eight hours a day, five days a week, and would miss three days a month. (Tr. 81). The VE testified that these additional limitations would preclude employment. (*Id.*). The VE also affirmed that employment would be precluded if the claimant needed to take unscheduled breaks twice per hour for ten minutes each or was off task 20 percent of the day. (*Id.*).

### C. Summary of the Medical Evidence

The Court assumes the parties' familiarity with the medical record, which is summarized below.

On March 24, 2011, Plaintiff was presented to Catherine Lavigne, M.D., for evaluation and management of her migraine headaches. (Tr. 220–21). Plaintiff noted she had migraines since age 15. (Tr. 220). These migraines lasted for about a day and occurred once every six months. (*Id.*). Plaintiff also had caffeine withdrawal headaches that could occur several times a week if she did not have her afternoon coffee. (*Id.*). Plaintiff contracted HSV keratitis in her eye 12 years ago, leading to scarring of her cornea and retina. (*Id.*). Plaintiff had several outbreaks over the following years, each lasting three to five days. (*Id.*). Plaintiff stated that since she became sober in 1999, her keratitis had been doing better. (*Id.*). Plaintiff was prescribed Valtrex but discontinued use for financial reasons. (*Id.*). A week before evaluation by Dr. Lavigne, Plaintiff had a particularly bad outbreak with multiple sores. (*Id.*).

On examination, Plaintiff was tender to palpation over the occipital region and there were no obvious lesions around her eye or within her inner eyelid. (Tr. 221). She did have some conjunctival swelling bilaterally but there was only mild erythema. (*Id.*). Her visual fields were full throughout, cranial nerves were normal, facial sensation was intact, and there was no facial weakness. (*Id.*). Dr. Lavigne noted that Plaintiff had complete relief of her pain with bilateral occipital nerve blocks. (*Id.*). Dr. Lavigne advised Plaintiff to follow up with an ophthalmologist if Plaintiff truly felt her vision was worsening. (*Id.*).

On May 25, 2011, Plaintiff received a computed topography ("CT") scan of her abdomen and pelvis revealing vague, poorly enhancing lesions in the right lobe of the liver, no evidence of pelvic lymphadenopathy or soft tissue mass, and a probable right ovarian cyst, likely physiologic in nature. (Tr. 226). On June 1, 2011, a magnetic resonance imaging ("MRI") of Plaintiff's abdomen showed vaguely enhancing, indeterminate lesions in the right lobe of the liver that correlated to some of the poorly enhancing lesions seen in the previous CT scan. (Tr. 227). Clinical correlation and short-term follow-up CT or MRI scans were recommended. (*Id.*).

On June 6, 2011, Plaintiff consulted Dr. Andrej Strapko for evaluation of her abdominal pain. (Tr. 355). Physical examination revealed minimal tenderness in the lower left quadrant, but no masses or free fluid. (*Id.*). An endoscopic colonoscopy was performed on June 8, 2011, and revealed a colon polyp, internal hemorrhoids, and anal polyps/condylomata. (Tr. 357). The polyps were removed by a snare and a biopsy revealed that they were benign. (Tr. 353).

A follow-up MRI was conducted on August, 23, 2011, on Plaintiff's abdomen which showed no abnormalities in the liver, pancreas, spleen, adrenal glands, or kidneys. (Tr. 228). There was no adenopathy, fluid collection, bowel wall thickening, or dilation detected. (*Id.*). The ill-defined areas of enhancement noted in the prior examination were not present. (*Id.*).

Plaintiff returned to Dr. Strapko on August 24, 2011, and complained of difficulty passing bowel movements. (Tr. 353). Plaintiff's physical examination was normal except for tenderness in her lower left quadrant. (*Id.*). Dr. Strapko noted that the pain in the lower left quadrant was likely related to irritable bowel syndrome and intrapelvic adhesions. (*Id.*). He suggested a laparoscopic evaluation and continued use of Benefiber and Miralax. (*Id.*). He also provided Plaintiff with a trial prescription of Donnatal. (*Id.*).

On September, 23, 2011, treating physician Dr. Kellie Reed evaluated Plaintiff and diagnosed her with abdominal pain,

herpes of the left eye, and rectal/anal Human Papillomavirus. (Tr. 329). Dr. Reed noted Plaintiff should not lift, push, pull, or carry more than five pounds or stand for more than 15 minutes. (*Id.*). She also noted Plaintiff should avoid working conditions and activities involving any dust, particles, or potential eye injuries. (*Id.*).

X-ray images of Plaintiff's abdomen were taken on October 3, 2011, and showed no abnormalities. (Tr. 229). Plaintiff's bowel gas pattern was normal, there was no evidence of foreign objects in the stomach, and no excessive fecal stasis or obstruction. (*Id.*).

On October 10, 2011, Dr. Megan Carmel performed an operative laparoscopy with possible lysis of adhesions on Plaintiff. (Tr. 230). Operative findings included a filmy omental adhesion in a curtain-like fashion across the juncture between the vaginal cuff and the urinary bladder. (*Id.*). Plaintiff's appendix, liver, and bilateral adnexa appeared normal with a small functional ovarian cyst on the right side. (*Id.*).

Dr. Reed issued a medical source statement on January 5, 2012, indicating that Plaintiff was physically limited to lifting, carrying, pushing, or pulling no greater than ten pounds. (Tr. 327). She also noted Plaintiff should avoid high stress work conditions and activities, but could and did use public transportation. (*Id.*). Dr. Reed indicated that Plaintiffs visual field and muscle function of the eyes were normal, and that her prognosis for Plaintiff's herpes of the left eye was good. (Tr. 323).

On February 7, 2012, Plaintiff sought treatment at Catholic Family Center where she expressed symptoms of depressed mood, anhedonia, insomnia, disrupted appetite with recent increase, low self-image, poor concentration, passive thoughts of being dead, anxiety, worry, difficulty relaxing, restlessness, irritability,

and a fear that something bad would happen. (Tr. 334). Plaintiff also noted that she drank 56 cups of coffee per week, smoked one to two packs of cigarettes a day, slept approximately five hours a night, and spent impulsively. (*Id.*). The evaluator indicated that Plaintiff had excessive and pressured speech, racing thoughts, and episodes of increased energy working on projects. (*Id.*). Plaintiff also reported that dirt bothered her and she felt anxious if things were out of place; leading to excessive cleaning which she claimed had caused her loss of employment. (*Id.*). Plaintiff noted she "cannot hold down a job because she quits." (*Id.*).

On March 6, 2012, Dr. Reed provided another medical source statement indicating the physical findings of chronic abdominal pain, back pain, and bipolar disorder were not consistent with Plaintiff's reported level of pain. (Tr. 243). Dr. Reed noted that Plaintiff could occasionally lift up to 15 pounds, and stand or walk up to six hours a day. (*Id.*). There were no limitations on sitting, understanding, memory, sustained concentration, persistence, social interaction, or adaption. (*Id.*).

On March 7, 2012, Dr. Theresa Schwartz provided a medical source statement indicating that Plaintiff had no limitations due to her anal dysplasia. (Tr. 261).

On March 26, 2012, Dr. Megan Carmel completed a medical source statement indicating she had seen Plaintiff on three occasions. (Tr. 264). She noted that Plaintiff had been required to miss two weeks of work following her surgery but had been recovering from surgery as expected. (Tr. 265).

On March 27, 2012, Plaintiff returned to Catholic Family Center and was evaluated by Deborah Spencer, RN, NPP. (Tr. 336). Ms. Spencer noted that Plaintiff was alert and cooperative but continued to have rac-

ing thoughts and difficulties concentrating. (Tr. 336–38). She commented that Plaintiff endorsed many symptoms of Bipolar Disorder Type II, but she would need to rule out border line personality disorder, post-traumatic stress disorder ("PTSD"), caffeine intoxication, and cannabis abuse. (Tr. 339, 345). Plaintiff indicated that she "somewhat" would like to work, "maybe" needs to get a job, and was "upset" about not having one. (Tr. 343).

On March 30, 2012, Dr. Harbinder Toor conducted an internal medicine consultative examination on Plaintiff. (Tr. 269). Plaintiff reported she had anal dysplasia, blood in her stool, herpes in her left eye, liver lesions, migraines, constant pain in the left side of her abdomen, irritable bowel syndrome, and bipolar disorder. (*Id.*). After a physical evaluation, Dr. Toor noted blurred vision in Plaintiffs left eye, tenderness in the left side of her abdomen, and slightly limited lumbar flexion and rotary movement. (Tr. 270–71). Dr. Toor stated that Plaintiffs migraine headaches could interfere with her routine and that she had mild to moderate limitations with bending and heavy lifting because of her abdominal pain. (Tr. 272).

On March 30, 2012, Dr. Christine Ransom conducted a psychiatric evaluation of Plaintiff. (Tr. 273). During the mental status evaluation Dr. Ransom noted that Plaintiff was cooperative and socially appropriate, but that her attention, concentration, and immediate memory were moderately impaired. (Tr. 274). Plaintiff reported that she conducted daily personal activities including food preparation, laundry, shopping, managing money, and driving a car. (Tr. 275). Plaintiff also reported she rarely socialized with anyone other than her children and spent most of her time sleeping, cleaning, or taking care of her children. (*Id.*). Dr. Ransom stated that Plaintiff could follow and under-

stand simple directions and instructions, perform tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule, and learn simple new tasks. (*Id.*). She noted that Plaintiff would have moderate difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress. (*Id.*). Dr. Ransom indicated that Plaintiff's prognosis was fair to good with continued treatment. (*Id.*).

On April 5, 2012, Dr. A. Hochberg conducted a psychiatric review of Plaintiff and determined that Plaintiff's affective and anxiety-related disorders caused mild restrictions on her daily living activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 282, 292, 296–97). Based on the evidence in the file, Dr. Hochberg opined that Plaintiff retained the ability to perform unskilled work. (Tr. 298).

Plaintiff made four visits to Lake Plains Eye Centers over a two-week period from April 24, 2012, to May 8, 2012, with complaints of blurry vision. (Tr. 349). After the first two visits, Dr. William Cosman noted that Plaintiff's condition was improving and he reminded Plaintiff to use her eye drops. (Tr. 349–50). After the final visit, Dr. Cosman noted that Plaintiff's condition was much improved and stable. (Tr. 352).

On June 7, 2012, Plaintiff received a full examination at Lake Plains Eye Center. (Tr. 442). Dr. Cosman noted that Plaintiff's eye had healed well and he discussed a corneal transplant to treat her decreased vison. (*Id.*). Dr. Crosman prescribed glasses for full-time use and advised Plaintiff not to drive until she had obtained glasses or contacts. (*Id.*). Plaintiff returned to Dr. Crosman on June 21, 2012, and complained of a "breakout" on her

eye. (Tr. 443). Dr. Crosman told Plaintiff to keep her hands away from her eyes and restarted her on Vigamox. (*Id.*).

On June 12, 2012, Plaintiff was referred to Dr. Tara Russow for a comprehensive evaluation of intellectual and personality functioning. (Tr. 425). On examination Plaintiff's demeanor was alert, cooperative, and motivated, but her speech was pressured, she made numerous spontaneous comments, and her thought processes were tangential. (Tr. 427). The results of the personality testing were consistent with Plaintiffs experiencing signs and symptoms of bipolar disorder and her reported history of depression. (*Id.*). Despite Plaintiff's statements regarding her abusive history and PTSD, her trauma scale scores fell in the normal range, suggesting they were being dealt with successfully. (*Id.*). Dr. Russow noted Plaintiff had difficulty with rapidly shifting moods, ideas, and perceptions that may lead to disrupted relationships, and truncated endeavors. (*Id.*). Plaintiff obtained a verbal I.Q. score in the 58th percentile, a performance I.Q. in the 27th percentile, and a full scale I.Q. in the 45th percentile which showed she functioned in the average range of intelligence. (Tr. 428). Dr. Russow noted that Plaintiff had a high proficiency in verbal comprehension and oral language processing skills. (*Id.*). Plaintiff's perceptual organization and visuospatial skills were slightly below average; her working memory scores were on the borderline of functioning; and her psychomotor processing speed was in the mild mental retardation range. (*Id.*). Dr. Russow noted that Plaintiff had several active and ongoing mental health and medical needs that will likely present barriers to vocational success until they are addressed more fully and comprehensively. (Tr. 429). Dr. Russow identified that highly demanding physical or cognitive activities are not possible and a vocational evaluation may assist in identifying vocational interests and aptitudes. (*Id.*).

Plaintiff attended weekly psychotherapy sessions with Ms. Spencer from March 2012 through July 2012. (Tr. 386–424). Plaintiff discussed with Ms. Spencer a number of stressors including her finances, fights with her boyfriend, and her medical conditions. (*Id.*). Generally, Plaintiff's judgment and insight were intact and she was alert and oriented but continued to have rapid and pressured speech. (*Id.*). Plaintiff reported that the Topamax had been working well to stabilize her moods. (Tr. 403, 415). Ms. Spencer noted that she saw no signs of psychotic, suicidal, or homicidal thoughts and that Plaintiff's condition was generally stable. (Tr. 386–424).

In July of 2012, Ms. Spencer completed a recovery care plan which outlined the progress made during Plaintiff's psychotherapy sessions. (Tr. 377–80). At the time of evaluation, Ms. Spencer diagnosed Plaintiff with bipolar disorder II. (Tr. 377). Ms. Spencer noted that Plaintiffs mental status had improved, she looked forward to attending the sessions, appeared to be gaining benefits from the support, and was motivated to seek part time employment opportunities. (Tr. 379).

On October 2, 2012, Plaintiff underwent a colonoscopy to remove a polyp. (Tr. 449). The procedure revealed internal hemorrhoids, of which biopsies were taken. (*Id.*).

On October 4, 2012, a CT scan was performed on Plaintiff revealing no abnormal masses and a small amount of free fluid in the pelvis which was likely physiologic.(Tr. 450).

Dr. Jeffery Goldstein performed a physical evaluation of Plaintiff on November 5, 2012. (Tr. 453). He noted that Plaintiff had squamous papilloma of the esophagus and helicobacter pylori, for which he treat-

ed her with Prevpac for 14 days. (*Id.*). The random colonic biopsies taken were negative. (*Id.*). The physical examination revealed no abnormalities. (*Id.*). Dr. Goldstein recommended a follow-up colonoscopy in three years, repeated testing for H. pylori, a follow-up appointment with her GYN physician for her persistent pain, and a follow-up appointment with him to review the results of the H. pylori antigen in two weeks. (*Id.*).

On November 26, 2012, Ms. Spencer completed a mental residual functional capacity questionnaire regarding Plaintiff. (Tr. 456). Clinical findings indicated that Plaintiff was psychiatrically stable, was responding positively to continued psychotherapy, and had a good prognosis. (*Id.*). Ms. Spencer indicated on a checklist that Plaintiff had "limited but satisfactory ability" to remember and carry out simple instructions, maintain regular attendance, sustain an ordinary routine, and take appropriate precautions. (Tr. 458). Plaintiff was seriously limited but not precluded from asking simple questions, accepting instructions and criticism, getting along with coworkers, and responding to changes in a work setting. (*Id.*). She was "unable to meet competitive standards" in eight criteria including understanding and remembering very short and simple work instructions, performing at a consistent pace without an unreasonable number and length of rest periods, and dealing with normal work stress. (*Id.*). Ms. Spencer indicated that Plaintiff's impairments lasted or could be expected to last at least 12 months and would cause Plaintiff to be absent from work more than four days per month. (Tr. 460).

On November 30, 2012, Plaintiff returned to Dr. Cosman complaining that her left eye twitched, that she had growths on the whites of her eyes, and continued to have headaches. (Tr. 461). Dr. Cosman

discussed using artificial tears as needed and the reactivation of the herpes which was likely causing the issues. (*Id.*). Plaintiff was advised to return to the office in one to two weeks with any changes. (*Id.*).

## III. DISCUSSION

### A. Standard of Review

■■■ This Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3). "In reviewing a decision of the Commissioner, the Court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing.'" *Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ. 6451(PAC)(SN), 2014 WL 1265918, at *9 (S.D.N.Y. Mar. 27, 2014) (quoting 42 U.S.C. § 405(g)). 42 U.S.C. § 405(g) directs the Court to accept findings of fact made by the Commissioner, so long as the findings are supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla," and "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987).

■■■ Therefore, the scope of the Court's review is limited to determining whether the Commissioner applied the appropriate legal standards in evaluating Plaintiff's claim, and whether the Commis-

sioner's findings were supported by substantial evidence in the record. *See Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983) (stating that a reviewing Court does not examine a benefits case *de novo* ). If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46–47 (2d Cir.1996).

■ Judgment on the pleadings may be granted under Rule 12(c) where the "material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988).

### B. Determining Disability Under the Social Security Act

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see Rembert v. Colvin,* No. 13–CV–638A, 2014 WL 950141, at *6 (W.D.N.Y. Mar. 11, 2014). A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable, clinical, and laboratory diagnostics techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

■ The burden is on the claimant to demonstrate that she is disabled within the meaning of the Act. *See Draegert v. Barnhart,* 311 F.3d 468, 472 (2d Cir.2002). The individual will only be declared disabled if her impairment is of such severity that she is unable to do her previous work and cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In making the disability determination, the ALJ follows a five-step sequential analysis. If the ALJ makes a determination at any step, the evaluation will not continue to the next step. 20 C.F.R. § 416.920(a)(4). The following five steps are followed:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir.2000); *see* 20 C.F.R. §§ 404.1520, 416.920.

## C. Analysis of ALJ's Determination

### 1. Step One

In applying the five-step sequential analysis at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 26, 2011, the alleged onset date. (Dkt. 1–1 at 7). While the evidence indicated that Plaintiff worked and had earnings for the year 2011, they did not meet the threshold to constitute substantial gainful activity. (*Id.*). The parties do not contest this determination and it is supported by substantial evidence.

### 2. Step Two

At the second step, the ALJ found that Plaintiff had the following severe impairments: irritable bowel syndrome, anal dysplasia, herpes of the eye, bipolar disorder, and borderline personality disorder. (*Id.*). The ALJ also noted that Plaintiff had some visual limitations, irritability, and showed signs of both circumstantial and racing thoughts during treatment. (*Id.* at 7–8). The ALJ acknowledged that Plaintiff complained of headaches, but found that the medical evidence indicated they were infrequent, had a minimal impact, and that the bilateral occipital nerve blocks completely relieved the pain. (*Id.* at 8). While Plaintiff continued to complain of abdominal pain, the ALJ found that the medical evidence indicated this was related to the diagnoses of irritable bowel syndrome and anal dysplasia. (*Id.*). The parties do not contest the ALJ's step two findings, and they are supported by substantial evidence.

### 3. Step Three

At the third step, the ALJ analyzed the medical evidence and found that Plaintiff did not have a listed impairment or combi-

nation of impairments that would render her disabled. (*Id.* at 8–9). Specifically, the ALJ considered Listings 5.06, 2.02, 12.04, and 12.08. (*Id.*). The parties do not contest the ALJ's findings at step three, and they are supported by substantial evidence.

### 4. Step Four

At the fourth step, the ALJ determined Plaintiff's residual functional capacity to perform work. (*Id.* at 9–10). The ALJ concluded that Plaintiff had the following RFC:

[t]o perform light work as defined in 20 C.F.R. 404.1567(b) but should only occasionally climb, stoop, kneel, crouch, or crawl. Claimant retains the mental residual functional capacity to perform unskilled work involving simple instructions where interactions with others are routine, superficial, and incidental to the work performed. Claimant needs a regular work break approximately every two hours. Claimant cannot perform jobs that require excellent depth perception.

(*Id.*). Based on this finding, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 17). The ALJ determined that the RFC finding precluded Plaintiff from her previous work as a driver for a car dealership as it required performance at the medium exertion level and good visual acuity. (*Id.*). Plaintiff contends that the ALJ's RFC finding is unsupported by substantial evidence because the ALJ improperly weighted the opinion of NP Spencer and failed to consider Plaintiff's ability to handle stress. (Dkt. 10 at 21).

#### a. Nurse Practitioner Spencer

Plaintiff contends that the ALJ failed to evaluate the opinion of nurse practitioner Deborah Spencer pursuant to

the appropriate legal standards. (*Id.*). Plaintiff argues that the ALJ's RFC assessment improperly discounted the treating source opinion of Ms. Spencer based only on a vague assertion that her opinion was inconsistent with the record and on the fact that she was considered an "other source" under SSR 06–03p. (*Id.*). The Commissioner argues that the ALJ gave some weight to Ms. Spencer's opinion and that the ALJ reasonably rejected her findings of more serious limitations because her assessment went unsupported by the treatment record and was inconsistent with the opinions of two "acceptable medical sources." (Dkt. 12 at 18–19).

■ SSR 06–03p provides that the ALJ must at least consider relevant medical evidence in the case record provided by "[m]edical sources who are not 'acceptable medical sources,' such as . . . nurse practitioners . . ." SSR 06–03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). "Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability . . . decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence allows a . . . reviewer to follow the adjudicator's reasoning . . . ." *Id.* at *6. In other words, "[w]hile the Commissioner is thus free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, those decisions should be explained." *Oaks v. Colvin*, No. 13–CV–917–JTC, 2014 WL 5782486, at *8 (W.D.N.Y. Nov. 6, 2014) (quoting *Sears v. Astrue*, No. 2:11–CV–138, 2012 WL 1758843, at *3 (D.Vt. May 15, 2012)).

■ While the ALJ is free to consider the opinions of these "other sources" in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician. *Genier v. Astrue*, 298 Fed.Appx. 105, 108 (2d Cir.2008). Although the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) only apply to "acceptable medical sources," the ALJ can apply them to opinions from "other sources." SSR 06–03p, 2006 WL 2329939, at *4. These factors include: the frequency of treatment, consistency with other evidence, degree of supporting evidence, thoroughness of explanation, and whether the source has an area of expertise. *Id.* Where two or more submitted medical opinions conflict, it is within the ALJ's discretion to determine which opinion will receive controlling weight. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998).

Here, ALJ Manico was permitted to give Ms. Spencer's opinion little weight and he explained why Ms. Spencer's opinion was inconsistent with the treatment record. (Dkt. 1–1 at 13). The ALJ gave weight to Ms. Spencer's psychiatric evaluations in establishing that Plaintiff was psychiatrically stable, had been responding positively to treatment, and showed signs of improvement. (*Id.* at 10). The ALJ noted that the portions of Ms. Spencer's opinion receiving little weight were those indicating severe limitations because they went unsupported by the treatment record. (*Id.* at 13). Ms. Spencer indicated via checklist that Plaintiff was "unable to meet competitive standards" in unskilled work for eight criteria including: understanding and remembering very short and simple instructions, making simple work-related decisions, and maintaining attention for a two-hour segment. (Tr. 458). "Unable to meet competitive standards" is defined as the inability to "satisfactorily perform this activity independently, appropriately, effectively, and on a sustained basis in a regular work setting." (*Id.*). The ALJ compared Ms. Spencer's opinion

to Dr. Ransom's opinion who noted that Plaintiff was capable of understanding simple directions and instructions. (Dkt. 1–1 at 12). Dr. Ransom also found that Plaintiff could perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule, and learn simple new tasks. (*Id.*).

The ALJ explained that Ms. Spencer's opinion was entitled to some weight, but that Dr. Ransom's opinion was entitled to more weight because of her greater education, training, and experience. (*Id.* at 13). This is permitted as Dr. Ransom, a licensed psychologist, is an "acceptable medical source" under SSR 06–03p, while Ms. Spencer, a nurse practitioner, is an "other source." SSR 06–03p, 2006 WL 2329939, at *1–2. Evidence from "other sources" cannot be used to establish the existence of a medically determinable impairment, but can provide insight into the severity and effects of impairments on an individual. *Id.* at *2. Ms. Spencer's findings of severe limitations also conflict with the opinion of Dr. Hochberg, an "acceptable medical source," who noted that Plaintiff was "not significantly limited" in understanding, remembering, or performing very short and simple instructions. (Tr. 296). Dr. Hochberg found only moderate restrictions in the areas of concentration and persistence. (Dkt. 1–1 at 12). The ALJ gave Ms. Spencer's opinion some weight, pointed to specific portions of her opinion that were inconsistent with the treatment record, and properly choose between conflicting medical opinions.

It is worth noting that Ms. Spencer's opinion indicated Plaintiffs severe limitations through a form report composed of checklists. (Tr. 458). Form reports of this sort, by their nature, are of limited evidentiary value. *Gray v. Astrue*, No. 09–CV–00584, 2011 WL 2516496, at *5 (W.D.N.Y. June 23, 2011) (citing *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993)). Further, Ms. Spencer did not explain 12 of the limitations falling in the two most limiting categories or provide the supporting medical findings, as the form required. (Tr. 458).

Accordingly, the ALJ did not err . in giving portions of Ms. Spencer's opinion less weight.

### b. Mental RFC Finding

Plaintiff contends that the ALJ's RFC assessment was unsupported by substantial evidence because the ALJ failed to consider Plaintiff's ability to handle stress. (Dkt. 10 at 26). Plaintiff argues that the ALJ did not explain how his RFC finding is ·reconciled with the medical evidence showing a potentially disabling limitation on handling stress, and therefore remand is appropriate. (*Id.* at 26–28). The Commissioner argues that the ALJ is not required to expressly address "stress" in the RFC finding and that the finding adequately reflected any stress-based limitations. (Dkt. 12 at 22–23).

SSR 85–15 provides that "the reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances ... [t]hus mentally ill may have difficulty meeting the requirements of so-called 'low-stress' jobs ... [a]ny impairment-related limitations created by an individual's response to demands of work ... must be reflected in the RFC assessment." SSR 85–15, 1985 WL 56857, at *6 (S.S.A. Jan. 1, 1985).

As an initial matter, the Second Circuit Court of Appeals has held that SSR 85–15 does not apply to cases where both exertional and non-exertional limitations are present. *Roma v. Astrue*, 468 Fed.Appx. 16, 20 (2d Cir.2012). SSR 85–15, descriptively titled "The Medical–Vocational

Rules as a Framework for Evaluating *Solely* Nonexertional Impairments," is meant to address situations involving only nonexertional limitations. *See* SSR 85–15, 1985 WL 56857, at *1 (emphasis added). Thus, the ALJ was not required to evaluate Plaintiff's ability to handle stress in the workplace, as Plaintiff suffers from both exertional and nonexertional impairments. *See Nosbisch v. Astrue*, No. 10–CV–285S, 2012 WL 1029476, at *5 (W.D.N.Y. Mar. 26, 2012) (holding SSR 85–15 is inapplicable where both exertional impairments, such as carpal tunnel syndrome, and nonexertional impairments, such as anxiety and depression, are involved); *Yarington v. Colvin*, No. 13–CV–016S, 2014 WL 1219315, at *5 (W.D.N.Y. Mar. 24, 2014) (collecting cases).

▉▉▉▉ However, even if SSR 85–15 applied here, the ALJ reflected Plaintiffs stressbased limitations in his RFC assessment. It is true that "[r]emand is ... appropriate where ... [a court] is 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'" *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982)); *see also Sweat v. Astrue*, No. 08–CV–1108, 2011 WL 2532932, at *6 (N.D.N.Y. May 23, 2011) (finding the ALJ's RFC determination was not supported by substantial evidence where "[t]he ALJ noted the consultative examiners' findings that Plaintiff would have difficulty dealing with stress, but did not explain how he reconciled those findings with his RFC assessment (which contained no determination regarding stress)."). The ALJ can show properly reconciled evidence when he comprehensively discusses the evidence in the record and concludes that it is consistent with the RFC assessment. *Patterson v. Astrue*, No. 5:11–CV–1143 (MAD/DEP), 2013 WL

638617, at *10 (N.D.N.Y. Jan. 24, 2013) (holding that comprehensive discussion of medical opinions regarding Plaintiff's stress and an RFC finding consistent with those opinions constituted substantial evidence).

Here, the ALJ comprehensively discussed the medical opinions in the treatment record and concluded that they were consistent with the RFC finding. (Tr. 25–32). Although the ALJ did not explicitly state how he arrived at this conclusion, there is substantial evidence in the record to support it. The ALJ's RFC assessment limits Plaintiff to "unskilled work involving simple instructions where interactions with others are routine, superficial, and incidental to the work performed." (Dkt. 1–1 at 9–10). This is consistent with Dr. Ransom's opinion that Plaintiff would have difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress but remained capable of learning and performing simple tasks. (*Id.* at 12). Similarly, Dr. Russow noted that despite Plaintiff's diagnosis of bipolar disorder, PTSD, and an anxiety disorder, her trauma scores fell in the normal range, indicating Plaintiff was successfully dealing with those issues. (*Id.* at 13). In addition, Dr. Reed, Plaintiffs primary care physician, opined that Plaintiff should avoid lifting, carrying, pushing, or pulling more than ten pounds and avoid only high stress work environments. (*Id.* at 8). While Ms. Spencer indicated that Plaintiff was "unable to meet competitive standards" in handling normal work stress, this goes unsupported by the record and the ALJ was entitled to give her opinion less weight, as previously discussed. (Tr. 458). Additionally, Ms. Spencer indicated Plaintiff's condition was stable and her prognosis was good. (Dkt. 1–1 at 13).

During the time of the hearing, Plaintiff appeared to have already been undertak-

ing tasks meeting the description of her RFC. Plaintiff reported that she cooked, cleaned, did laundry, shopped, managed her money, drove her car, and took care of her children. (Tr. 275). These tasks are simple, routine, and do not involve significant interaction with others, consistent with the ALJ's RFC assessment.

Accordingly, as the ALJ was not required to address Plaintiff's ability to handle stress and Plaintiff's stress-based limitations were reflected in the RFC assessment, the RFC is supported by substantial evidence.

### 5. Step Five

At the fifth step, the ALJ considered Plaintiff's age, education, work experience, and RFC assessment to determine if Plaintiff could perform jobs that exist in significant numbers in the national economy. (Dkt. 1–1 at 18–19). ALJ Manico found that Plaintiff's ability to perform all or substantially all requirements of "light work" was "impeded" by Plaintiffs additional limitations. (*Id.* at 18). ALJ Manico relied on the testimony of VE Berger to find that Plaintiff was capable of performing existing jobs, including package line worker and assembler. (*Id.* at 18–19).

Plaintiff argues that the ALJ's step five finding was not supported by substantial evidence because the ALJ relied on VE testimony in response to an "exceedingly vague" hypothetical question. (Dkt. 10 at 28). Plaintiff contends that the hypothetical question made Plaintiffs limitations unclear because the ALJ used imprecise terms including "routine," "superficial," and "incidental." (*Id.* at 29–30). The Commissioner argues that the plain and established meaning of the ALJ's words made it clear what Plaintiff's limitations were, thus the hypothetical question accurately produced jobs Plaintiff could perform. (Dkt. 12 at 24–25).

At step five of the analysis, the burden shifts to the Commissioner to demonstrate that there are a substantial number of jobs available in the national economy which Plaintiff could perform. *Balsamo,* 142 F.3d at 80. The Commissioner will utilize the Medical Vocational Guidelines or "Grids" found at 20 C.F.R. Part 404, Subpart P, Appendix 2. *Pratts,* 94 F.3d at 38–39. However, "if a claimant has nonexertional impairments which 'significantly limit the range of work permitted by his exertional limitations,' then the Commissioner cannot rely upon the grids, and instead 'must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform.'" *Griffith v. Astrue,* No. 08–CV6004 CJS, 2009 WL 909630, at *4 (W.D.N.Y. Mar. 31, 2009) (citing *Pratts,* 94 F.3d at 39); *see also,* 20 C.F.R. § 416.969a(d).

A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *Bosmond v. Apfel,* No. 97 Civ. 4109(RPP), 1998 WL 851508, at *8 (S.D.N.Y. Dec. 8, 1998); *see also De Leon v. Sec'y of Health & Human Servs.,* 734 F.2d 930, 935–36 (2d Cir.1984) (in determining claimant's RFC, ALJ improperly ignored psychologist's findings that claimant was of low intelligence and social comprehension). If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a VE's response cannot constitute substantial evidence to support a conclusion of no disability. *Melligan v. Chater,* No. 94–CV–944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996). Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker,* 712 F.2d 1545, 1554 (2d Cir. 1983).

Here, the ALJ presented the VE with Plaintiff's RFC which the ALJ based upon the medical opinions in the treatment record. (Tr. 75). As previously discussed, the ALJ applied the appropriate weights to the medical opinions and the RFC is based upon substantial evidence. In addition, the plain meaning of the words used by the ALJ in the hypothetical question made the limitations on Plaintiff's ability to interact with others clear, as the Commissioner noted. (Dkt. 12 at 24). Further, VE Burger affirmed that he understood the hypothetical question and did not need clarification. (Tr. 77). *See, e.g., Thompson v. Astrue,* No. 12–CV–111S, 2013 WL 265239, at *5 (W.D.N.Y. Jan. 23, 2013) (dismissing Plaintiffs claim that the RPC finding was unsupported by substantial evidence because of a vague hypothetical question posed to the VE).

As the ALJ's RFC was supported by substantial evidence, and because the ALJ did not commit legal error in evaluating Plaintiff's claim, the Court finds that the ALJ properly relied on the VE's testimony to find that there are a significant number of jobs in the national economy that Plaintiff could perform. *See Dumas,* 712 F.2d at 1553–54. (finding the ALJ properly relied on the VE's responses to a hypothetical that was based on the ALJ's substantially supported RFC assessment).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.